## AUSTIN, NICHOLS & CO., Inc. v. UNITED STATES.

### No. 46279.

United States Court of Claims.

Jan. 3, 1950.

Joseph Schwartz, New York City, Barnes, Richardson & Colburn, New York City, on the brief, for plaintiff.

Joseph H. Sheppard, Washington, D. C., with whom was Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe and Ellis N. Slack, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

In this case the question is whether a rectification tax of 30 cents per proof gallon on rum imported into the United States from the Philippine Islands was properly collected by the Commissioner of Internal Revenue.

Between October 7, 1938, and July 7, 1941, plaintiff paid to the Collector of Internal Revenue the sum of $5,846.38 as a rectification tax of 30 cents per gallon imposed by Section 605 of the Revenue Act of 1918, 40 Stat. 1108, and Section 2800 (a) (5) of the Internal Revenue Code, 26 U.S.C.A. § 2800 (a) (5), on a series of shipments of rum brought into the United States from the Philippine Islands, and which had been treated in the manner hereinafter set out.

The plaintiff timely filed a claim for refund of the taxes paid, stating as grounds for such claim that the rum in question was not rectified, purified or refined within the meaning of the act imposing the rectification tax; that the producer of the rum was not a rectifier within the meaning of the act, and the rum was not subject to such tax.

The Commissioner of Internal Revenue rejected the claim.

The rum in question was produced in accordance with what was known as formula No. 2 which was duly filed by the plaintiff with the Bureau of Internal Revenue as required by Treasury Decision 4770. The formula was as follows:

1. Fermentation is started by fermenting a small quantity of molasses diluted with water.

2. When active fermentation has begun, same is added to the bulk of the mash for further fermentation.

3. In due course, the mash is distilled, heads and tails being removed.

4. The distillate is put through a filtering process.

5. The distillate is redistilled.

6. The distillate is stored in wood for aging purposes.

7. Several months before bottling, harmless coloring or flavoring material are added in a total amount not in excess of one-half (½) %, after which aging in wood continues until ready to bottle.

The coloring or flavoring matter, or both, referred to in the formula, were added after distillation was complete.

The rectification of distilled spirits is ordinarily accomplished by distillation in a rectification plant which results in partial purification of the original product through the removal of certain impurities. Rectification is ordinarily accomplished by mixing the original distillate with other substances. In each instance a product different from the original product results.

The artificial coloring and flavoring are added in order to provide the resulting product with some of the characteristics of brandy. They also impart to the finished product certain properties of flavor and attractive appearance not inherent in the original distillate.

A rectifying plant is necessarily separate from a distillery, and any processing of distilled spirits in a rectifying plant is recognized in the trade as rectification. The trade in the United States recognizes a distillate produced in accordance with formula No. 2 as a rectified product.

The facts in this case thoroughly show that the product imported by plaintiff was redistilled and after such redistillation other materials were added, either flavoring or coloring matter. Either of these steps in the manufacture of the product would cause it to fall within the statutory definition of rectified spirits.

It has been held that the addition of burnt sugar, caramel, or other coloring or flavoring to distilled spirits constitutes rectification. T. D. 883, 8 Treasury Decisions, Internal Revenue 39 (1905). Other Treasury decisions follow this same interpretation.

Section 190.241 of Regulations 15 (1940 ed.) provides that

"The addition of sugar, dextrose, rock candy, or any sweetening materials, or of essences, extracts, or other flavoring materials, or of any coloring material, such as caramel, to spirits or wines by a rectifier, regardless of quantity, constitutes rectifica-

tion and necessitates payment of the rectifying tax on the finished product, * *."

The only other question raised by the plaintiff is that the rectification tax is not an internal revenue tax; that Section 2800 (a) (1) of the Internal Revenue Code levies an internal revenue tax on spirits produced in or imported into the United States; that Section 2800 (a) (5) levies an additional tax on distilled spirits at the rate of 30 cents on each proof gallon which is rectified, purified or refined.

The plaintiff then calls attention to Section 3340 (a) (1), 26 U.S.C.A. § 3340 (a) (1), which reads as follows:

"Amount. There shall be levied, collected, and paid, in the United States, upon articles, goods, wares, or merchandise coming into the United States from the Philippine Islands a tax equal to the internal-revenue tax imposed in the United States upon the like articles, goods, wares, or merchandise of domestic manufacture."

The plaintiff takes the position that the last quoted article simply levies on the imported products from the Philippine Islands a tax equal to the internal revenue tax; that while this makes the product subject to the regular tax on distilled spirits generally, it does not justify the collection of the additional tax on rectified spirits and wine. Plaintiff claims that the latter tax is not an internal revenue tax and that therefore the product coming from the Philippine Islands is not subject to the rectification tax.

While the position has a degree of plausibility, it will not stand analysis. Pertinent provisions of the Internal Revenue Code are as follows:

"Sec. 2800. Tax.

"(a) Rate.—

"(1) Distilled spirits generally.—There shall be levied and collected on all distilled spirits (except brandy) in bond or produced in or imported into the United States an internal revenue tax at the rate of $2.25 (and on brandy at the rate of $2.00) on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. * *

"(5) Rectified spirits and wines.—In addition to the tax imposed by this chapter on distilled spirits and wines, there shall be levied, assessed, collected, and paid, a tax of 30 cents on each proof gallon and a proportionate tax at a like rate on all fractional parts of such proof gallon on all distilled spirits or wines rectified, purified, or refined in such manner, and on all mixtures produced in such manner, that the person so rectifying, purifying, refining, or mixing the same is a rectifier within the meaning of section 3254 (g): * * *" 53 Stat. 298.

"§ 3254. Definitions.

* *. * * * *

"(g) Rectifier. Every person who rectifies, purifies, or refines distilled spirits or wines by any process other than by original and continuous distillation from mash, wort, or wash, through continuous closed vessels and pipes, until the manufacture thereof is complete, and every wholesale or retail liquor dealer who has in his possession any still or leach tub, or who keeps any other apparatus for the purpose of refining in any manner distilled spirits, and every person who, without rectifying, purifying, or refining distilled spirits, shall, by mixing such spirits, wine, or other liquor with any material, manufacture any spurious, imitation, or compound liquors for sale, under the name of whisky, brandy, gin, rum, wine, spirits, cordials, or wine bitters, or any other name, shall be regarded as a rectifier, and as being engaged in the business of rectifying: * * *." 26 U.S.C.A. § 3254.

It will be noted that the provision for a tax on rectified spirits and wine is not only a part of the internal revenue code, but is a part of the same section which includes the provision for taxing distilled spirits generally. This is followed by the definition of a rectifier which is practically all-inclusive.

It was clearly the intention of the Congress in the enactment of the code to levy the same tax on the product imported into this country from the Philippines that is imposed upon a product manufactured in

this country. This places the two products on the same basis. It is clear not only from the classification in the provisions of the Internal Revenue Code, but also from its language that it was the intention to treat both products alike. The plaintiff is not entitled to recover, and the petition is therefore dismissed.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.